|  | AUSA: | Ranya Elzein | Telephone: (313) 226-0213 |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: | Nathaniel Han, FBI | Telephone: (517) 230-8169 |

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Michigan

United States of America
v.
KOLLIER DEVONTE RADNEY

Case No.

Case: 2:21−mj−30124
Assigned To : Unassigned
Assign. Date : 3/12/2021
Description: RE: SEALED MATTER (EOB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 2020 through November 10, 2021 in the county of Wayne in the Eastern District of Michigan, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591(a) | Sex trafficking of a Minor and/or by Force, Threats of Force, Fraud or Coercion |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Nathaniel Han, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: March 12, 2021

_____
Judge's signature

City and state: Detroit, MI

Hon. David R. Grand, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Nathaniel Han, being duly sworn, depose and state the following:

## INTRODUCTION

1. I am employed by the Federal Bureau of Investigation as a Special Agent and have been for approximately five years. I currently work on the Southeast Michigan Trafficking and Exploitation Crimes ("SEMTEC") Task Force. I have been involved in investigating child sexual exploitation and human trafficking crimes, foreign counterintelligence matters, and organized crime. I have consulted with numerous other SEMTEC agents, including those that have worked on human trafficking investigations for many years.

2. This affidavit is made in support of an application for a criminal complaint and arrest warrant for **KOLLIER DEVONTE RADNEY** for violations of 18 U.S.C. § 1591(a) (Sex trafficking of a Minor and/or by Force, Threats of Force, Fraud or Coercion).

## PROBABLE CAUSE

3. On November 2, 2020, SEMTEC received notice from the National Center for Missing and Exploited Children ("NCMEC") that a 15-year-old female, a real person whose identity is known to your affiant (hereinafter "MV-1"), was being

posted in online ads for commercial sex. The advertisements included photographs of MV-1 and instructed viewers to contact phone number (313) 4XX-09XX.

4. The same day, an undercover SEMTEC officer contacted (313) 4XX-09XX to solicit a sex date. The officer received a response agreeing to meet with him, but the officer stopped receiving communications from that phone number shortly thereafter.

5. Also on the same day, an employee at the La Quinta Hotel in Romulus, Michigan informed Homeland Security Investigations ("HSI") Detroit of suspicious activity by RADNEY. RADNEY had rented a room at the hotel and was staying there with two minor females. The employee was concerned that RADNEY was trafficking the females. RADNEY told the hotel employee that he was in a "poly-relationship" with the females. When the employee asked how that worked, RADNEY said the relationship worked because the females are "really young."

6. In response to the report, HSI agents went to the La Quinta Hotel on November 2, 2020, where they encountered MV-1 and a 16-year-old female in the lobby of the hotel. The minors declined to answer questions or identify themselves to HSI.

7. HSI agents attempted to make contact with RADNEY in his hotel room, located on the third floor. Agents knocked, and RADNEY stated that he was

coming to the door. However, surveillance footage shows that RADNEY jumped out of the third-story window and walked away. HSI agents later conducted a traffic stop of RADNEY, who denied being at the hotel.

8. EMS tether, a company that monitors a GPS tether device on RADNEY, informed me that RADNEY's tether was at the La Quinta Hotel in Romulus on November 2, 2020. RADNEY was required to wear the tether as part of his release on bond in a 2018 criminal case out of Warren, Michigan.

9. On November 10, 2020, Canton Police Department informed SEMTEC about another possible minor trafficking victim. The same day, SEMTEC recovered this minor in Canton, MI. The minor, a real person whose identity is known to your affiant, was the same 16-year-old girl that HSI agents encountered with MV-1 on November 2, 2020. This minor (hereinafter "MV-2") had travelled to Detroit from out of state and called the police to ask for assistance in getting home.

10. SEMTEC agents interviewed MV-2 that night. After initially denying engaging in commercial sex acts while in Detroit, MV-2 admitted to doing so at the direction of a woman named "Skylar." She explained that "Skylar" flew her to Detroit under the guise of a lavish lifestyle, but that when she arrived, she learned that she was expected to do commercial sex work. MV-2 explained that she stayed with "Skylar" in Detroit and engaged in commercial sex acts at Skylar's direction.

In describing her time in Detroit, MV-2 explained that she did not have cellular phone service and was only able to use Wi-Fi, she did not know the Detroit area, she did not have money, she did not know the bus system in the area, and she could not book hotel rooms or find a place to stay on her own or even to shower. MV-2 also informed SEMTEC that MV-2 was with MV-1 and encountered the agents in the La Quinta Hotel in Romulus, Michigan.

11.  On February 1, 2021, MV-2 was interviewed by an FBI child-adolescent forensic interviewer. During the forensic interview, MV-2 explained that the person she described in her first interview as flying her to Detroit to engage in commercial sex acts was not a woman named "Skylar." MV-2 clarified that the person was a male, and continued to provide details about her time with him, but she declined to provide his name. At the end of the forensic interview, however, MV-2 was shown a photograph of RADNEY, and she identified him as the person she had been discussing throughout the forensic interview and said his name is Kollier. Below is a summary of some of MV-2's statements from the forensic interview, with RADNEY's name used for ease of reading.

    a. In or around October 2020, MV-2 was living in a foster home in a state other than Michigan. During that time, she met RADNEY through Snapchat Social Media messaging. RADNEY offered to fly MV-2 to

    Detroit, promising a lavish lifestyle. Because MV-2 did not have anyone who cared for her where she was living, she accepted his offer.

b. RADNEY paid for MV-2's plane ticket to Detroit, and she arrived there in or around October 2020. When she arrived, RADNEY picked her up from the airport and took her to an Airbnb where he was staying.

c. RADNEY showed MV-2 Listcrawler, a website that displays commercial sex ads, and explained how it worked. He told her that she could earn $21,000 per week if she engaged in commercial sex acts with seven people per day.

d. MV-2 told RADNEY that she was 16 years old, and RADNEY said that her age was not a problem.

e. Shortly after she arrived in Detroit, RADNEY took MV-2 shopping and purchased $300 worth of things for her, including marijuana and expensive liquor. RADNEY also provided MV-2 alcohol, pills, and marijuana. MV-2 sent RADNEY nude photos of herself from her cellular phone, and RADNEY used them to create and post commercial sex ads depicting MV-2.

f. MV-2 spent approximately one month with RADNEY and engaged in commercial sex acts at his direction. He posted commercial sex

advertisements for her, and when she learned how, she created ones herself.

g. RADNEY instructed MV-2 to charge approximately the following amounts for commercial sex acts: $300 for 10-15 minutes, $650 for 30 minutes, and $700-$800 for one hour.

h. During her time with RADNEY, MV-2 engaged in sex acts with six or seven people in exchange for a total of approximately $10,000.

i. RADNEY took all of MV-2's earnings from the dates for personal use, including purchasing controlled substances such as ecstasy. RADNEY became angry if MV-2 tried to keep some of the money she earned, so she eventually started lying about how much money she charged and keeping some of the earnings.

j. RADNEY required MV-2 to use condoms, which he always provided.

k. RADNEY intimidated MV-2 on multiple occasions by pointing a gun at her and constantly showing her guns. Additionally, when RADNEY became angry, he would invite his friends to come over with guns in what MV-2 felt was an effort to intimidate MV-2.

l. RADNEY had a number of "scary" guns, including guns that MV-2 described as machine guns and guns with lasers.

m. During the time MV-2 was with RADNEY, he found MV-1 soliciting commercial sex on the street in Detroit and picked her up.

n. At some point, RADNEY forced MV-1 and MV-2 to rob a woman that he knew and provided them assault rifles to use during the robbery.

o. On November 2, 2020, when HSI agents encountered MV-1 and MV-2 in the lobby of the La Quinta Hotel, MV-1 and MV-2 were attempting to escape from RADNEY. MV-2 was afraid that if RADNEY knew they were trying to leave, he would hurt or kill them. After agents approached them in the lobby, MV-1 and MV-2 ran from the hotel.

p. After escaping from RADNEY, MV-1 and MV-2 spent a number of days together. Eventually, MV-1 and MV-2 got in a fight, and MV-1 left. After that, in November 2020, MV-2 returned to RADNEY.

q. When MV-2 returned to RADNEY, he rented a hotel room for them, and she again engaged in commercial sex acts at his direction. In one night, she earned $1000. When she kept some of the money for herself, RADNEY became angry. MV-2 then requested to leave RADNEY and go back home. RADNEY told MV-2 that she must purchase the plane ticket without RADNEY's assistance, even though RADNEY paid for MV-2's plane ticket to Michigan. Since MV-2 had insufficient funds, RADNEY told MV-2 to go to the side of the road and ask for money.

    r.  On November 10, 2020, when RADNEY left to get food, MV-2 left him, went to the parking lot of a Bob Evans, and called the police. As described above, a Canton police officer responded and recovered MV-2.

12.    I conducted a search on Spotlight, a law enforcement database that gathers commercial sex advertisements, and found advertisements depicting photographs of MV-1 and MV-2 and advertising them for commercial sex in the Detroit area. The advertisement for MV-1 appeared to have been posted on November 2, 2020, and the advertisement for MV-2 appeared to have been posted in October 29, 2020. The advertisements were posted on Megapersonals.eu, a website used to advertise commercial sex.

[Intentionally left blank]

## CONCLUSION

13. For the reasons set forth above, I believe probable cause exists that **KOLLIER DEVONTE RADNEY** violated 18 U.S.C. § 1591(a) (Sex trafficking of a Minor and/or by Force, Threats of Force, Fraud or Coercion).

Respectfully submitted,

Nathaniel Han
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence and/or by reliable electronic means.

HONORABLE DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

Dated: March 12, 2021

9